# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ISAAC M. HENSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-163-RAW |
| | ) |
| AMERIGAS PROPANE, INC., | ) |
| | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the court is the motion of the defendant for summary judgment. Plaintiff was employed by defendant and suffered an on-the-job injury on or about August 10, 2012. He alleges that he was discharged on or about October 11, 2013, and that in so doing defendant violated the Americans with Disabilities Act ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"). He also asserts defendant's decision to terminate him was taken in retaliation for his engaging in statutorily-protected conduct under Oklahoma's workers' compensation laws.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact . . . the movant is entitled to judgment as a matter of law." Rule 56(a) F.R.Cv.P. In making that determination, a court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Garrison v. Gambro, Inc.,* 428 F.3d 933, 935 (10th Cir.2005).

Plaintiff commenced employment with defendant on May 23, 2011 as a Delivery

Representative.[1] This position involved filling propane tanks for delivery, driving a company truck to make such deliveries, and interacting with customers. On his commercial route, plaintiff would come in contact with each customer, as he had to physically hand them a ticket. Plaintiff was less likely to see residential customers. The delivery trucks were equipped with DriveCam, which could capture audio and video if triggered by unusual motion, such as hard braking, cornering too fast, or even "running" stop signs.

On September 30, 2011, DriveCam recorded plaintiff taking a corner too fast at 27 mph. Plaintiff was brought into his supervisor's office and discussed the incident. Plaintiff agreed he would slow down on corners. Another DriveCam event was recorded on December 21, 2011 for a cornering speed of 23 mph.

Plaintiff received his first Performance Appraisal in April, 2012, which stated "he needs to slow down around corners." (#32-15, page 3 of 4 in CM/ECF pagination).[2] Plaintiff told his supervisor on August 10, 2012 that he had hurt his hand and needed to see a doctor. Plaintiff left work and iced his hand that day, but returned to work and was able to perform his job duties, although one knuckle would swell and then contract from time to time.

---

[1] Defendant's motion makes reference to its Employee Handbook, for which plaintiff signed an acknowledgment of receipt on May 23, 2011 (#32-8). Plaintiff responds that the portions defendant now cites were issued in November, 2013, after plaintiff was fired. (#39 at ¶¶10 & 11). Defendant has not responded to this assertion. Therefore, the court does not rely upon the Employee Handbook.

[2] In the appraisal, Ms. Morris also states "I applaud his work ethics," plaintiff is "great at being a team player" and "Isaac is a great asset to our team and works very hard with his commercial customers. I truly appreciate him!!!" (*Id.* at page 4 of 4). She reiterates, however, that "I urge him to slow down" and "[h]is drive cam clips indicate that he rushes at times." *Id.*

2

On October 15, 2012, plaintiff's DriveCam was triggered for running a stop sign at 5 mph. This incident was also discussed with plaintiff. On November 12, 2012, plaintiff's DriveCam recorded him at a cornering speed of over 30 mph. On November 16, 2012, plaintiff received an Employee Disciplinary Report for his repeated safety violations. (#32-14).[3] Also in November, 2012, plaintiff went to a doctor, and was told he had osteoarthritis in one finger. Plaintiff was placed on light duty (counting inventory, filing paperwork, inspecting tanks, scraping and painting tanks, training another driver, and moving tanks by use of a truck). Plaintiff went to medical care providers over 60 times between his date of injury and date of termination.

On April 10, 2013, plaintiff had a conversation (in front of Sarah Brake [previously Enright], a Customer Service Representative of defendant) with a potential customer. Ms. Brake interpreted plaintiff's statements as telling the customer he should go somewhere else. On the same day, Cindy Morris (District Manger and plaintiff's direct supervisor) came into the Tahlequah office and asked plaintiff to come into her office. Plaintiff refused. On April

---

[3]This document contains statements by both sides which could be viewed as sincere or as self-serving. The supervisor writes that "I do not want you to be involved in accident or worse yet to be the victim of a rollover." Further, "AmeriGas will support you in any way feasible but please realize the responsibility falls on your shoulders. Let me know if feel there is something I can assist with along the way." For his part, plaintiff wrote under Employee Comments that the discipline "is plain & simple [harassment] because I have hurt my hand at work & now I am going to be fired eventually."

In regard to the present motion, cites this document as an example of suspicious timing. He asserts that Ms. Morris belatedly reported his on-the-job injury on or about November 8, 2012. (#39 at page 15 of 35, ¶6.) Then, "Eight (8) days later, Henson was the subject of his first ever Employee Disciplinary action in the form of a written warning related to safety violations going back to September 2011." *Id.* at page 16 of 35, ¶7. This does not take account of one driving violation taking place on November 12, 2012, which was only <u>four</u> days before the Disciplinary notice. The driving violation in October, 2012 also post-dated plaintiff's injury and pre-dated the Disciplinary notice.

3

11, 2013, plaintiff received his second disciplinary warning (#32-16) and was suspended for four days. The general reason cited was "Insubordination and Attitude," and the incidents mentioned in this paragraph of this order were discussed. Under Employee Comments, plaintiff wrote: "This is the second case of [harassment] since I have hurt my hand and I believe it will continue."

Plaintiff had surgery on his hand on April 23, 2013, and was released back to full duty on July 10, 2013. He passed his fitness-for-duty tests and returned to work on July 29, 2013. Plaintiff received a Performance Appraisal in May of 2013, which noted the DriveCam record, and plaintiff's poor attitude and "anger" toward his fellow employees.

In August of 2013, a safety audit was conducted by James Cox, the area Safety Advisor. Cox mentioned a policy that if any driver received a ticket during the scope of employment, it would be the driver's responsibility to pay it. Plaintiff reacted negatively, as reflected in Cox's memorialization of the incident (#32-19). Cindy Morris observed some of the incident, and discussed it with plaintiff the next day.

On August 28, 2013, defendant received a survey regarding a customer named Bonnie Orvis. Ms. Orvis complained that plaintiff was being intimidating. On September 17, 2013, customer Glen Miller called into the Tahlequah office to report a conversation Miller had with plaintiff about defendant's corporate office in Pennsylvania, which evidently reflected negatively on the corporate office. On September 20, 2013, Ms. Brake notified Ms. Morris that plaintiff was intimidating her during a conversation regarding a ticket.

4

In Sepember, 2013, Dr. Bischoff evaluated plaintiff and opined that a second surgery would be beneficial. (Plaintiff has not demonstrated this information was conveyed to defendant). On October 5, 2013, another driver (Randy Simmons) was called out to a customer's house which plaintiff had serviced the day before. Simmons found that the gauge had been left open on the propane tank. On October 7, 2013, a customer called to notify the company that it had not delivered propane as promised. Defendant investigated and learned plaintiff had made his delivery to the wrong customer.

Plaintiff was terminated on October 11, 2013. A disciplinary report (#32-23) cites the incidents described in the previous three paragraphs of this order. Under Nature of Incident, the following pre-printed box is checked: Conduct. It appears two additional categories have been added with an "x" placed next to each: (1) "Safety Violation (Explain) Leaving fixed liquid level gauge open" and (2) "Other (Explain) Insubordination and Attitude." Plaintiff underwent joint replacement surgery on his hand on July 22, 2014.

The ADAAA prohibits discrimination "against a qualified individual on the basis of disability." 42 U.S.C. §12112(a). Thus, to establish a prima facie case of discrimination under the ADAAA, a plaintiff must demonstrate (1) he is disabled as defined under the ADAAA; (2) he is qualified, with or without reasonable accommodation by the employer, to perform the essential functions of the job; and (3) he was discriminated against because of his disability. *Adair v. City of Muskogee,* 2016 WL 3034084, *5 (10th Cir.2016). Plaintiff bears the burden of raising a genuine issue of material fact on each element of his prima facie case. *Doyal v. Oklahoma Heart, Inc.,* 213 F.3d 492, 495 (10th Cir.2000).

If plaintiff submits evidence from which a reasonable jury could conclude that a prima facie case of discrimination has been established, defendant must then offer sufficient evidence of a legitimate, nondiscriminatory reason for its action. If defendant does so, plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext to mask discrimination. Although the burdens of production shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *See Carter v. Pathfinder Energy Servs., Inc.,* 662 F.3d 1134, 1141 (10th Cir.2011).

The definition of disability is to be construed in favor of broad coverage. *See* 42 U.S.C. §12102(4)(A). With respect to an individual, a disability is (A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an impairment; or (C) being regarded as having such an impairment. *See* 42 U.S.C. §12102(1).[4] Moreover, the scope of a "regarded as" claim is modified by 42 U.S.C. §12102(3)(A) in that a claim may be stated "whether or not the impairment limits or is perceived to limit a major life activity."

Thus, "[u]nlike an impairment as defined in subsections (A) or (B), an impairment under §12102(1)(C) need not limit or even be perceived as limiting a major life activity – the employer need only regard the employee as being impaired, whether or not the employer also believed that the impairment prevented the employee from being able to perform a major life

---

[4] Plaintiff does not contend he has a record of an impairment, but does assert he had an actual impairment, and that defendant regarded him as impaired.

activity.  Under the ADAAA, the only qualification for an impairment in a 'regarded as' claim is that the impairment not be 'transitory and minor.'" *Adair*, at *6.  A transitory impairment is an impairment with an actual or expected duration of 6 months or less.  *Id.* (citing 42 U.S.C. §12102(3)(B)).

Under plaintiff's "actual impairment" claim, he must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities.  *Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir.2014).  A non-exhaustive list of major life activities in set forth in 42 U.S.C. §12102(2)(A).  *See also* 29 C.F.R. §1630.2(i)(1)(i).  Whether an impairment "substantially limits" a major life activity "is not meant to be a demanding standard," and "should not demand extensive analysis." 29 C.F.R. §1630.2(j)(1)(i),(iii).

First, plaintiff does not expressly identify the major life activity on which he relies. At the summary judgment stage, plaintiff must point to some evidence showing that his impairment limits some major life activity.  *Sanchez v. Vilsack,* 695 F.3d 1174, 1178 (10th Cir.2012).  A plaintiff may not simply identify an impairment and leave the court to infer that it results in substantial limitation to a major life activity.  *See Scavetta v. Dillon Companies, Inc.,* 569 Fed.Appx. 622, 625 (10th Cir.2014).  Defendant does not rely on this point in its motion, and plaintiff does mention in passing that Dr. Chalkin endorsed restrictions on lifting, pulling and pushing.  (#39 at page 25 of 35 in CM/ECF pagination).  Defendant also placed plaintiff on "light duty," which evidently involved lifting restrictions.  "Lifting" is listed as a major life activity under 42 U.S.C. §12102(2)(A).  This element is satisfied.

7

Nevertheless, defendant seeks summary judgment on the "actual disability" claim on the basis that plaintiff has not shown a <u>substantial</u> limitation inasmuch as his hand injury was non-severe, with temporary restrictions. The motion will not be granted on this basis. While the statutory language of "substantially limits" remains, the implementing regulations state that the impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. §1630.2(j)(1)(ii). One court has interpreted "'substantially limits" as something akin to 'materially restricts.'" *Marsh v. Terra Intern.,* 122 F.Supp.3d 1267, 1281 (N.D.Okla.2015). Viewing the record in the light most favorable to plaintiff, this element is satisfied as well.

Next, plaintiff must demonstrate that he is a "qualified individual" i.e., "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8). This involves a two-part analysis: first, whether the plaintiff can perform the essential functions the job, i.e., functions that bear more than a marginal relationship to the job at issue; second, if the court concludes that plaintiff is not able to perform the essential functions of the job, the court must determine whether any reasonable accommodation by the employer would enable him to perform those functions. *Adair*, at *7.

The court defers to an employer's judgment concerning essential functions, but the employer's judgment is not conclusive evidence. *Id.* Here, defendant contends that plaintiff could not perform the essential job function of "adequately and professionally

communicat[ing] with his co-workers and customers." (#32 at page 25 of 34 in CM/ECF pagination). The motion will not be granted on that basis. Plaintiff's "communication skills" have no bearing on his alleged disability. Defendant relies upon *EEOC v. Picture People, Inc.,* 684 F.3d 981 (10th Cir.2012), but in that case the employee's disability (profound deafness) was directly related to the "essential function" of strong verbal communication skills. In the court's view, without such a logical connection (as in the case at bar) such assertions are better considered under the "reason for termination" and "pretext" prongs of an ADAAA claim, not the "qualified individual" prong.[5] Viewing the record in the light most favorable to plaintiff, he could perform the essential functions of the position, including with the reasonable accommodation of the lifting restrictions. Thus, plaintiff has raised a genuine issue of material fact that he was a "qualified individual."

Under the third prong of the prima facie case, plaintiff must submit some affirmative evidence that his disability was a determining factor in the employer's decision. *Selenke v. Medical Imaging of Colorado,* 248 F.3d 1249, 1259 (10th Cir.2001). The burden is "not onerous," but it is also "not empty or perfunctory." *Id.* The temporal proximity of the disclosure of a disability to a plaintiff's termination may contribute to a permissible inference of discriminatory intent. *Butler v. City of Prairie Vill., Kan.,* 172 F.3d 736, 749 (10th Cir.1999).

---

[5]There is authority for the proposition that a district court may consider evidence not related to the employee's disability in deciding whether the employee was a qualified individual. *Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 862 (7th Cir.), *cert. denied,* 546 U.S. 1033 (2005). It does not appear the Tenth Circuit has addressed the issue.

9

The court finds plaintiff's evidence fairly weak in this regard. He does demonstrate some temporal proximity between the disclosure of his hand injury and certain discipline that he received. His ultimate termination in October of 2013, however, is relatively far removed from the revelation of injury in August 2012, and even his surgery in April, 2013. After surgery, he was put on light duty and ultimately restored to full duty in July, 2013. Still, there is some temporal proximity of a few months between surgery and termination. The court finds plaintiff has met his "not onerous" burden on the third prong. Thus, plaintiff has established a prima facie case on his "actual disability" claim.

Plaintiff concedes that defendant has articulated a legitimate, nondiscriminatory reason for discharge. (#39 at page 30 of 35 in CM/ECF pagination). Therefore, the burden shifts back to plaintiff. To defeat summary judgment, he must present enough evidence that a reasonable fact finder could conclude that defendant's proffered reason for its employment decision was pretextual, i.e., so incoherent, weak, inconsistent, or contradictory that a rational fact finder could conclude the reasons were unworthy of belief. *Metzler v. Federal Home Loan Bank of Topeka,* 464 F.3d 1164, 1172 (10th Cir.2006). In determining whether he did so, it is not for the court to decide whether defendant's reasons for its business decision were "wise, fair, or even correct," so long as those were the true reasons for the decision. *Hardy v. S.F. Phosphates Ltd. Co.,* 185 F.3d 1076, 1083 (10th Cir.1999). In determining whether the proffered reasons were pretextual, the court must look at the facts as they appeared to the employer when it made its employment decision. *Kendrick v. Penske*

*Transp. Servs, Inc.,* 220 F.3d 1220, 1231 (10th Cir.2000). A court may not "act as a super personnel department that second guesses employers' business judgments." *Id.* at 1233.

The court finds plaintiff has failed to present a genuine issue of material fact as to pretext. Aside from the argument regarding temporal proximity (already discussed in regard to the third prong of the prima facie case), plaintiff disputes the imposition of discipline upon him in terms of unfairness or consistency with company policy. The plaintiff has not established a genuine issue of material fact that the defendant's stated reasons of insubordination, attitude, general conduct and safety violations were pretextual. Even viewing the record in the light most favorable to plaintiff, the court concludes summary judgment should be granted as to his "actual disability" claim.

Turning to the "regarded as" claim, for a plaintiff alleging disability discrimination to show that the employer regarded him as having an impairment, the plaintiff must show that (1) he has an actual or perceived impairment, (2) that impairment is neither transitory nor minor, and (3) the employer was aware of and therefore perceived the impairment at the time of the alleged discriminatory action. *Adair,* at *6. As previously stated, under such a claim a plaintiff needs to plead and prove only that he was regarded as having a physical or mental impairment, not that the actual or perceived impairment substantially limited one or more major life activities. *Id.* The court finds plaintiff has established these elements. As previously stated, an impairment is transitory or minor if it has an actual or expected duration of six months or less. *See* 42 U.S.C. §12102(3)(B). Plaintiff's hand impairment arguably

exceeded this time frame, despite his first surgery. Therefore, plaintiff had a "disability" for purposes of 42 U.S.C. 12102(1)(C).

Even under a "regarded as" claim, plaintiff must still demonstrate he is a "qualified individual." *See Adair* at *7. The court makes the same finding as it did in regard to plaintiff's "actual disability" claim – he has sufficiently demonstrated this element of the prima facie case. The court additionally makes the same finding as to the third prong. Plaintiff has established a genuine issue of material fact that he was discriminated against because of a perceived impairment. Accordingly, a prima facie case under the "regarded as" claim has been established as well.

Applying the same burden-shifting analysis previously employed, the court again finds that defendant has articulated a legitimate nondiscriminatory reason for its action, and that plaintiff has failed to raise a genuine issue of material fact as to pretext. Thus, summary judgment is appropriate as to plaintiff's "regarded as" claim as well.

Finally, the court addresses plaintiff's state-law claim. While Oklahoma law has since changed, at the time of the litigated events it prohibited the termination of an employee for filing a workers' compensation claim or initiating a proceeding. *See* 85 O.S. §341(A) (2011).[6] To establish a prima facie case of retaliation, plaintiff must show (1) employment, (2) a job-related injury, (3) medical treatment so that the employer is put on notice, or a good faith start of workers' compensation proceedings and (4) consequent termination. *Tadlock*

---

[6]This was the effective statute at the time of plaintiff's discharge. Oklahoma has since created a Workers' Compensation Commission (85A O.S. §19(A)) with exclusive jurisdiction to hear and decide retaliation claims. (85A O.S. §§7(A) & (B)).

12

*v. Marshall County HMA, LLC,* 603 Fed.Appx. 693 703 (10th Cir.2015).[7] A showing of "consequent termination" requires production of evidence that gives rise to "a legal inference [that] the discharge was significantly motivated by retaliation for exercising one's statutory rights." *Wallace v. Halliburton Co.,* 850 P.2d 1056, 1058 (Okla.1993). Here, plaintiff cites suspicious timing, the fact that plaintiff continued receiving merit pay increases and was described by defendant as a good employee. Viewing the record in the light most favorable to plaintiff, the court finds he has met his burden of establishing a prima facie case.

"Like federal courts, Oklahoma has adopted a burden-shifting framework for retaliatory-discharge claims." *Adair,* at *13. Defendant must articulate a legitimate non-retaliatory reason. *Id.* If the employer carries this burden of production, the plaintiff's burden merges with his ultimate burden of persuading the court that he has been the victim of retaliatory discharge. *Id.*

Under the same analysis employed as to plaintiff's ADAAA claims, the court finds that defendant has articulated a legitimate, nondiscriminatory reason for plaintiff's discharge, and that plaintiff has failed to rebut that reason. As to the state-law claim, plaintiff has not shown that his discharge was "significantly motivated" by statutorily-protected conduct or that the defendant's well-documented reasons for terminating plaintiff are "unworthy of credence." *Id.* at 15.

---

[7]Defendant does not dispute the first three elements. (#32 at page 30 of 34 in CM/ECF pagination). "Under Oklahoma law, a plaintiff's prima facie burden in a retaliatory discharge case is 'relatively easy.'" *Callahan v. Communication Graphics,* 2015 WL 5156888, *9 (N.D.Okla.2015)(quoting *Buckner v. Gen. Motors Corp.,* 760 P.2d 803, 806 (Okla.1988)).

It is the order of the court that the motion for summary judgment of defendant (#31) is hereby granted in all respects.

**ORDERED THIS 7th DAY OF JUNE, 2016.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma